IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**SHEMENTE JONES** **PLAINTIFF**

v. CIVIL ACTION NO. 3:18-cv-298-DPJ-FKB

**UNITED STATES** **DEFENDANT**

## COMPLAINT

COMES NOW, Plaintiff, Shemente Jones, and files this her Complaint against the United States. In support thereof, Plaintiff would show unto the Court the following facts and circumstances, as follows:

## PARTIES

1. Plaintiff, Shemente Jones is an adult resident citizen of Rankin County, Mississippi residing at 119 Beechwood Circle, Pearl, Mississippi 39208-5071.

2. Defendant, the United States by and through, Jackson Hinds Comprehensive Health Center ("JHCHC") a Program grantee under 42 U.S.C. § 254(b) and a Public Health Service employee pursuant to 42 U.S.C. § 233(g)-(n) through its' employee Kesha Flantroy, M.D., who at all times herein was acting within the course and scope of her employment for the United States government, provided gynecological medical services to Plaintiff at JHCHC located at 3502 West Northside Drive, Jackson, Mississippi 39213.

## JURISDICTION AND VENUE

3. This Court possesses exclusive jurisdiction over this matter as Plaintiff's claims are subject to the Federal Tort Claims Act. 28 U.S.C. § 1346(b).

4. Venue is proper as the Plaintiff's residence and the alleged acts and omissions occurred in the Southern District, Northern Division of Mississippi. 28 U.S.C § 1402(b).

1

## NOTICE OF CLAIM AND CERTIFICATE OF CONSULTATION

5. Notice of intention to file this action was provided to the Defendant, by submitting a Standard Form 95 ("SF-95") to the United States Department of Health and Human Services on October 30, 2017. 28 U.S.C. §2675(a). *See Plaintiff's Notice of Intention to Sue, Standard Form 95 and Certified Mail Receipts attached hereto as Exhibit "A."*

6. Attached hereto is a Certificate of Consultation pursuant to the requirements of Miss. Code Ann. §11-1-58(1)(a).

## FACTS

7. Epithelial cell abnormalities and mild dysplasia were first discovered on Plaintiff's Pap smear on September 7, 2010 and identified again on a repeat Pap smear on March 5, 2011. These findings were categorized as a low grade squamous intraepithelial lesion; however, Plaintiff was unaware of the results of these Pap smears.

8. Dr. Kesha Flantroy, an employee of Jackson Hinds Comprehensive Health Center and acting within the course and scope of her federal employment assumed Plaintiff's obstetrical and gynecological care in 2011. Plaintiff became pregnant in 2011 and Dr. Flantroy managed Plaintiff's prenatal course and delivered Plaintiff's child in November of 2011. At no time did Dr. Flantroy advise Plaintiff of her 2010 or 2011 abnormal Pap smears.

9. A December 17, 2013 Pap smear ordered by Dr. Flantroy again revealed an epithelial cell abnormality, but was now categorized as atypical squamous cells. More importantly, for the first time, endocervical and/or metaplastic cells were identified. Neither Dr. Flantroy nor any other JHCHC employee communicated these results to Plaintiff. No additional tests were ordered and no medical treatment was implemented for Plaintiff.

2

10. In January of 2014 Dr. Flantroy performed a bilateral tubal ligation on Plaintiff, but again did not inform Plaintiff of or address the September, 2010, March, 2011, or December, 2013 abnormal Pap smears.

11. On June 5, 2014, yet another Pap smear was performed on Plaintiff. The results confirmed the presence of epithelial cell abnormalities, atypical glandular cells, and endocervical and/or squamous metaplastic cells. Still, Plaintiff was not informed of these or the 3 previous abnormal Pap smear results. Further, no additional tests were ordered and no medical treatment was implemented for Plaintiff.

12. On December 18, 2014, a 5th abnormal Pap smear was obtained. It also revealed endocervical and/or metaplastic cells. Plaintiff was not advised of these abnormal results or the results of the 4 previous abnormal Pap smears. Again, no additional tests were ordered and no medical treatment was implemented for Plaintiff.

13. On June 6, 2016, a 6th abnormal Pap smear was obtained. It revealed an epithelial cell abnormality, atypical squamous cells, cannot exclude high-grade squamous intraepithelial lesion. Neither these results nor the results of the previous 5 abnormal Pap smears were communicated to Plaintiff. No additional tests were ordered and no medical treatment was implemented for Plaintiff.

14. Upon information and belief, Plaintiff called JHCHC in late January or early February to obtain a prescription refill and was informed, for the first time, that she was scheduled to undergo a colposcopy on February 22, 2017. JHCHC refused to provide Plaintiff with any details over the phone. Plaintiff, immediately drove to JHCHC to learn her diagnosis, what the procedure entailed, and why she had been scheduled for the procedure without her knowledge.

15. Plaintiff met with Dr. Flantroy that same day at JHCHC. Dr. Flantroy, informed her of the

June 6, 2016 Pap smear results and explained the necessity of the colposcopy procedure. During this conversation Dr. Flantroy did not mention the abnormal results of any of the 2010 -2014 Pap smears.

16. A colposcopy was performed on February 22, 2017 and it revealed endocervical glands with dysplasia, which were suspicious for adenocarcinoma and low grade squamous intraepithelial lesions.

17. An adenocarcinoma tumor involving the entire endocervical canal and aspects of the endometrium and vaginal wall required Plaintiff to undergo a radical hysterectomy and bilaterial salpingo-oophorectomy. Her cervix, uterus, both ovaries and fallopian tubes were removed. Thereafter, due to the risk of recurrence, Plaintiff received radiation and chemotherapy treatments.

18. Despite making repeated written requests for copies of her records, JHCHC ignored those requests and its' employees actively worked to thwart Plaintiff from obtaining her medical records. Specifically, JHCHC employees repeatedly stated that the requests had either not been received, were being processed, or had been misplaced. Even after JHCHC was advised that the continued refusal to comply with Plaintiff's request for her records would be viewed as an "intentional, willful withholding and/or destruction of evidence" no records were produced and JHCHC provided no response of any kind.

## CAUSES OF ACTION

19. Plaintiff reasserts all previous statements as if fully stated herein.

20. At all times relevant to this cause of action, Defendant, through its' employees and agents, including but not limited to Dr. Kesha Flantroy, owed Plaintiff a duty to provide accurate and timely medical diagnoses based on all known or knowable circumstances. Defendant further owed to Plaintiff a duty to exercise that degree of care of a reasonably prudent person, as well as that

degree of skill, care, and competence normally exercised by minimally competent, reasonably prudent healthcare providers under the same or similar circumstances. Defendant failed to exercise the requisite degree of care, was negligent, and breached said duties owed to Plaintiff. As a result of Defendant's negligence, Plaintiff has sustained damages as set forth herein.

21. At all times material herein, Defendant, through its' employees and agents, including but not limited to Dr. Kesha Flantroy, owed a non-delegable duty to Plaintiff to:

   a. Provide medical care and treatment consistent with nationally recognized minimum standards of competency;

   b. Assure that medical treatment and procedures were properly provided to Plaintiff as her condition warranted; and

   c. Other such duties and obligations to be shown at the trial of this matter.

22. Defendant had a duty to maintain and implement adequate standards, policies, and procedures for credentialing physicians to provide competent medical care and for the provision by its properly credentialed medical staff to properly identify and treat conditions such as those presented by Plaintiff.

23. Defendant breached each of the duties set out above, which were owed to Plaintiff, causing injury to Plaintiff as a direct result thereof.

24. Defendant's intentional withholding and/or destruction of Plaintiff's medical records despite receiving numerous requests and opportunities to produce the same evidences spoliation of evidence.

25. Defendant is legally responsible for the actions and/or inactions of its' employees and agents under the legal doctrine of *respondeat superior*, and it is specifically plead by Plaintiff in this civil action.

## DAMAGES

26. As a direct and proximate result of the negligence of the named Defendant, Plaintiff is entitled to recover the full amount of monetary damages allowed under Mississippi law. Said damages include, but are not limited to:

   a. Medical expenses incurred as a result of having to undergo additional procedures, hospitalizations, and medical care and treatment, past, present, and future;

   b. Past, present, and future physical pain and suffering and emotional distress;

   c. Past, present and future lost wages; and

   d. Such other incidental and consequential damages as may be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, the Plaintiffs bring this action and demand actual damages in the amount of $5,000,000.00, along with all costs of this action, and post-judgment interest.

THIS, the 9th day of May, 2018.

Respectfully submitted,

SHEMENTE JONES
By Her Attorneys,

SIMMONS SMITH MERCIER & HARRIS

By: _____
A. Bryan Smith III
MB No. 100008

A. Bryan Smith III, MB No. 100008
Jessica L. Dilmore, MB No. 105266
**SIMMONS SMITH MERCIER & HARRIS**
240 Trace Colony Park Drive
Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 914-2882
Facsimile: (601) 914-2887

## CERTIFICATE OF EXPERT CONSULTATION

I hereby certify that I have consulted with a physician expert who is qualified to give expert testimony as to the standard of care and is knowledgeable of the relevant issues involved in this cause of action, and that as a result of said review and consultation, I have concluded that there is a reasonable basis for the commencement of this action.

THIS, the 9th day of May, 2018.

*/s/ A. Bryan Smith III*
A. Bryan Smith III